United States District Court
Southern District of Texas

**ENTERED**

February 02, 2023

Nathan Ochsner, Clerk

**United States District Court**
**Southern District of Texas**
**FILED**

FEB 02 2023

**Nathan Ochsner, Clerk**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| EUSTORGIO GUZMAN RESENDEZ, | § | |
| | § | |
| Petitioner, | § | |
| | § | CIVIL ACTION NO. 7:22-CV-45 |
| VS. | § | |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## REPORT AND RECOMMENDATION

Petitioner Eustorgio Guzman Resendez, a state prisoner proceeding pro se, initiated this action in February 2022 by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1.)  In January 1991—more than thirty (30) years before Petitioner filed this action—Petitioner was indicted for capital murder based on his role in the murder of four individuals.  Petitioner pleaded not guilty to the charges; however, a jury found him guilty and subsequently sentenced him to life imprisonment.

Since his conviction, Petitioner has filed numerous state and federal habeas petitions, seeking various forms of relief.  This is Petitioner's second federal habeas petition addressing his 1991 conviction.  Presently, Petitioner asserts three grounds for relief; in the first he alleges that the state court where he was convicted lacked proper jurisdiction for several reasons. Petitioner's next two claims both address his previous request for "forensic DNA testing."[1] Respondent has moved for summary judgment, contending that Petitioner's first claim (regarding jurisdiction) should be denied as successive.  (Docket No. 5, at 6-7.)  As to Petitioner's other

---

[1] Petitioner also recently filed a "Motion for Forensic DNA Testing" (Docket No. 9), which will be addressed alongside his claims regarding forensic DNA testing in this report. *See infra* Part II.C.

claims, Respondent argues that they should be denied because Petitioner has failed to state a cognizable federal habeas corpus claim. (*Id.* at 7-9.)

After carefully considering the pleadings in this case, the state court record, and the applicable law, the undersigned concludes that this action should be dismissed. As explained further below, Petitioner's first claim is successive, and the District Court lacks jurisdiction to consider it. Petitioner's remaining claims regarding the state court's denial of his post-conviction motion for DNA testing and ineffective assistance of counsel should be dismissed because he has failed to show any violation of his federal constitutional rights. Accordingly, it is recommended that Respondent's motion for summary judgment be granted and that this action be dismissed.

## I. BACKGROUND[2]

On April 9, 1991, a grand jury in Starr County, Texas, indicted Petitioner for the offense of capital murder. Due to the heinous nature of the murders, Petitioner's case received significant media attention. To ensure a fair and impartial criminal process for Petitioner, his case was transferred to the 139th District Court of Hidalgo County, Texas, where he pleaded not guilty and proceeded to trial. The jury did not believe Petitioner's version of events, and on January 28, 1992, found him guilty of capital murder. The next day, the jury sentenced him to life imprisonment, rather than a death sentence.

In addressing Petitioner's direct appeal, the Thirteenth Court of Appeals of Texas summarized the facts of his case as follows:

---

[2] The information set out in this section is taken from the State Court Record filed in this case, the documents submitted by Petitioner and Respondent, the Thirteenth Court of Appeals' decision addressing Petitioner's direct appeal, and also the undersigned's report and recommendation addressing Petitioner's first federal § 2254 writ of habeas corpus. *Resendez v. State*, 860 S.W.2d 605, 606-07 (Tex. App.—Corpus Christi 1993, pet. ref'd). (*See* Docket Nos. 1, 5, 6; *Resendez v. Thaler*, 7:11-CV-172, Docket No. 13.)

Resendez and Ovidio Garcia advanced approximately 100 pounds of marihuana to Juan Hinojosa. Hinojosa, in turn, advanced the marihuana to Ruben Piña. Piña put the marihuana into Juan Arguelles' possession, but law enforcement agents confiscated it. Piña paid part of the debt, and Resendez, Hinojosa, and Garcia met in Rio Grande City on January 29, 1991, to discuss how to collect the rest of the money from Piña. Hinojosa agreed to try to convince Piña to come to a ranch in Starr County. Piña sent Alejandro Garcia in his stead, and Resendez and Ovidio Garcia forced Alejandro to call Piña from a store in Alto Bonito and to tell Piña that the truck had broken down at a rest stop on U.S. Highway 83. Hinojosa carried a .45 caliber handgun, Ovidio Garcia carried a 9 mm handgun, and Resendez carried an AK–47 and a 9 mm handgun taken from Alejandro.

Ruben Piña, Gregorio Piña, and Juan Arguelles arrived in a van at the rest stop. Resendez and Ovidio Garcia approached the van, brandished weapons, and took Gregorio Piña and Juan Arguelles from the van through the front doors. Hinojosa approached the side sliding door, opened it, and Ruben Piña emerged, firing a handgun at Ovidio Garcia and at Hinojosa. Hinojosa, Ovidio Garcia, and Resendez returned fire at the van. Hinojosa shot Ruben Piña once or twice, and Ovidio Garcia shot Arguelles, but neither man was killed. Approximately 20 or 25 shots were fired at the van.

Resendez, Ovidio Garcia, and Hinojosa returned to Alejandro Garcia's truck, which, ironically, would not start. The three men then entered the van, and Resendez shot Ruben Piña in the head. They placed Arguelles in the rear of the van and placed Gregorio Piña next to Ruben Piña's body. They drove west, jettisoning Ruben Piña's .22 caliber handgun along the way. The group then drove the van back to the ranch, where they picked up Alejandro Garcia, who was being held by a man named Jesus.

Hinojosa exited the van, and he and Jesus drove in a northerly direction, away from the ranch. Resendez and Ovidio Garcia drove away in the van. Hinojosa later found the van in a field and spoke with Resendez who told him that he should burn the truck they had abandoned at the rest stop. Hinojosa and Jesus drove to the rest stop, took Alejandro Garcia's truck to Sullivan City, and burned it. Jesus then took Hinojosa to visit his girlfriend, and Resendez and Ovidio Garcia went to her house and picked up Jesus. Resendez said that they had killed Arguelles, Alejandro Garcia, and Gregorio Piña and had destroyed the evidence. Hinojosa then went to Monterrey with his girlfriend.

The next morning at 8:00 a.m., Deputy Sheriff Mascorro, Deputy Sheriff Gonzales, Inspector Flores, and Inspector Fuentes examined the burned van where it had been found in Starr County. They pulled four bodies, burned beyond recognition, out of the van which was completely burned and riddled with bullet holes. They took the bodies, jewelry, keys, nail clippers, a pocket knife, belt buckles, shell casings, and watches they found in the van. Relatives of the victims identified the various objects as belonging to the victims.

3

The bodies were transported to McAllen, where Dr. Santos, a forensic pathologist, examined them. Dr. Santos determined that each victim had died before the fire, that the cause of death for bodies 3 and 4 was gunshot wounds to the chest, and that the cause of death for bodies 1 and 2 was gunshot wounds to the head.

Inspectors Flores and Fuentes went to the rest area on U.S. Highway 83 and found bullet casings from five different weapons. On the side of the highway, west of the rest area, they found a .22 caliber handgun.

An informant contacted investigators and gave them information leading to the arrest of Hinojosa, Ovidio Garcia, and Resendez. Hinojosa, still in Monterrey, learned of the investigation and the outstanding warrant from his girlfriend. Hinojosa called the investigators and informed them that he wished to surrender himself and a weapon used in the shoot-out. On March 23, 1991, Hinojosa arrived at the Roma port of entry and was taken into custody. That day he received the Miranda warnings and gave a statement describing the drug deals, the kidnapping, the shoot-out, and the murders. On April 7, 1991, the grand jury in Starr County issued capital murder indictments for Hinojosa, Ovidio Garcia, and Resendez.

*Resendez v. State*, 860 S.W.2d 605, 606-07 (Tex. App.—Corpus Christi 1993, pet. ref'd).

Petitioner's primary challenge in his direct appeal was that the evidence supporting his conviction was factually insufficient. *Resendez*, 860 S.W.2d at 606. However, on July 29, 1993, the Thirteenth Court of Appeals rejected Petitioner's claims in his direct appeal and affirmed his conviction. *Id.* at 609. Beginning in 2001—approximately eight years after his direct appeal was dismissed—Petitioner has filed a variety of pleadings with the State of Texas; including the following: 1) post-conviction motions for forensic DNA testing; 2) state applications for writs of habeas corpus; and 3) writs of mandamus.[3]

In 2011, Petitioner filed his first federal petition for habeas corpus relief pursuant to 28 U.S.C. § 2254. (*See Resendez v. Thaler*, 7:11-CV-172, Docket No. 1.) In his first federal

---

[3] Petitioner's various state court pleadings are fully summarized in the report addressing his first federal petition for habeas corpus. (*See Resendez v. Thaler*, 7:11-CV-172, Docket No. 13, at 5-7.)

petition, he raised the following five claims: 1) the state courts inadequately considered his fourth state habeas petition; 2) actual innocence; 3) an exclusionary rule violation; 4) ineffective assistance of counsel; and 5) a due process and equal protection violation. (*See Resendez*, 7:11-CV-172, Docket No. 13, at 5-7.) After analyzing the claims in Petitioner's first federal habeas petition, Magistrate Judge Peter E. Ormsby recommended that they be dismissed as untimely. (*Id.* at 8-14.) On September 26, 2012, the District Court adopted the recommendation and denied Petitioner's first federal habeas petition. (*Id.* at Docket Nos. 16, 17.) In 2018, approximately six years later, the District Court also denied a request by Petitioner to reopen his first federal habeas petition. (*Id.* at Docket Nos. 27, 28, 32, 33.)

In early 2021, Petitioner filed a motion seeking authorization from the Fifth Circuit Court of Appeals to file a successive federal habeas petition. *See In re: Eustorgio Guzman Resendez*, No. 21-40200, Docket Nos. 1, 12 (5th Cir. Mar. 22, 2021). The Fifth Circuit summarized the claims that Petitioner wished to raise in his successive petition as follows:

> If granted authorization, he intends to argue that he is actually innocent; the trial court lacked jurisdiction; the State used invalid means to identify the victims and their causes of death; one of the witnesses has since recanted his testimony; the evidence was insufficient because the State relied on testimony from a codefendant that was not supported by physical evidence; his due process rights were violated by the use of perjured testimony by his codefendant; the State presented a weapon that had been suppressed to the jury as the murder weapon; his sentence was imposed in violation of Texas procedural laws; the State suppressed evidence; and his counsel was ineffective.

*See Resendez*, No. 21-40200, Docket No. 29, at 1. In a terse opinion, the Fifth Circuit "denied in part and denied as unnecessary in part" Petitioner's motion for authorization. *Id.* at 2. Specifically, the Fifth Circuit denied Petitioner authorization to file a successive federal petition as to all of his asserted claims, except his claim challenging "the denial of his motion for forensic DNA testing to confirm that blood evidence collected at one of the crime scene locations

belonged to two of the victims in this case." *Id.* The Fifth Circuit explained that because Petitioner's "proposed claim [regarding DNA testing] is based on events that occurred after his prior § 2254 application, it is not successive and he does not require authorization to pursue it." *Id.*

On January 27, 2022, about ten (10) years after Petitioner's first federal habeas petition was dismissed, he filed the instant § 2254 petition, which is his second petition seeking federal habeas corpus relief.[4]  (Docket No. 1.)  Petitioner's second federal petition raises the following three claims: 1) the state trial court lacked jurisdiction; 2) the 229th District Court erred when it denied his request for DNA testing; and 3) ineffective assistance of counsel related to his most recent request for DNA testing.  (Docket No. 1, at 2, 6-7, 11-17.)  As noted, Petitioner also recently filed a "Motion for Forensic DNA Testing" (Docket No. 9).  *See supra* n.1.

Respondent has moved for summary judgment, contending that Petitioner's first claim challenging "the trial court's jurisdiction regarding his capital murder trial is successive." (Docket No. 5, at 6-7.)  In addition, Respondent argues that Petitioner's remaining two claims— both of which address his denied request for DNA testing—should be dismissed because they are not cognizable federal habeas corpus claims.  (*Id.* at 7-9.)  Petitioner has not filed a response to the summary judgment motion.  (*But see* Docket Nos. 7-9.)

## II.  ANALYSIS

### A.    Standard of Review

The writ of habeas corpus provides an important, but narrow, examination of an inmate's conviction and sentence.  *See Harrington v. Richter*, 562 U.S. 86, 103 (2011); *Barefoot v.*

---

[4] This is the date that Petitioner signed his federal habeas petition, which is the earliest possible date that it could be considered filed.  *See Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) ("[A] habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing.").

*Estelle*, 463 U.S. 880, 887 (1983). "Society's resources have been concentrated at [a criminal trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens." *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *see also McFarland v. Scott*, 512 U.S. 849, 859 (1994) (stating that a "criminal trial is the 'main event' at which a defendant's rights are to be determined"). The States "possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights." *Engle v. Isaac*, 456 U.S. 107, 128 (1982).

If a petitioner has presented his federal constitutional claims to the state courts in a procedurally proper manner, and the state courts have adjudicated their merits, AEDPA provides for a deferential federal review. "[T]ime and again," the Supreme Court "has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" *White v. Wheeler*, 136 S. Ct. 456, 460 (2015) (quoting *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013)). As mandated by AEDPA, an inmate may only secure relief after showing that the state court's rejection of his claim was either (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1),(2).

Petitioners arguing legal error in state court decisions must comply with § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts."

*Gray v. Epps,* 616 F.3d 436, 439 (5th Cir.2010) (citing *Williams v. Taylor,* 529 U.S. 362, 404–08 (2002)).  To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014)).  In contrast to "ordinary error correction through appeal," AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems . . . ." *Woods*, 135 S. Ct. at 1376 (quotation omitted).  A petitioner must "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 134 S. Ct. at 1702 (quoting *Richter*, 562 U.S. at 103); *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010); *Williams*, 529 U.S. at 413.  "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

A petitioner challenging the factual basis for a state decision must show that it was an "unreasonable determination of the facts in light of the evidence."  28 U.S.C. § 2254(d)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).  State court findings are "presumed to be correct" unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

Generally, federal courts presume that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see also Jackson v. Johnson*, 194 F.3d 641, 651 (5th Cir. 1999) ("When faced with a silent or

ambiguous state habeas decision, the federal court should look through to the last clear state decision on the matter."). Thus, when the TCCA summarily rejects a prisoner's claim, federal courts can "ignore—and hence, look through—an unexplained state court denial and evaluate the last reasoned state court decision." *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999). AEDPA requires federal courts to defer to the TCCA's summary decision to deny relief. *See Harrington v. Richter*, 562 U.S. 86, 99 (2011); *see also Johnson v. Williams*, 133 S. Ct. 1088, 1095 (2013) (observing that AEDPA deference is proper even in "instances in which a state court may simply regard a claim as too insubstantial to merit discussion").

These standards will be applied in considering Petitioner's grounds for relief.

## B.   Successive Claim

Because the District Court has already considered, and denied, Petitioner's initial federal habeas petition, the instant action presumptively falls within the Anti-Terrorism and Effective Death Penalty Act's ("AEDPA") limitations on successive habeas proceedings. Congress enacted AEDPA to make it "significantly harder for prisoners filing second or successive federal habeas applications under 28 U.S.C. § 2254 to obtain hearings on the merits of their claims." *Graham v. Johnson*, 168 F.3d 762, 772 (5th Cir. 1999).

While AEDPA "does not define the term 'second or successive' application," the Fifth Circuit has held "that a petition is successive when it: '1) raises a claim challenging the petitioner's conviction or sentence that was or could have been raised in an earlier petition; or 2) otherwise constitutes an abuse of the writ.'" *Hardemon v. Quarterman*, 516 F.3d 272, 275 (5th Cir. 2008) (quoting *In re Cain*, 137 F.3d 234, 235 (5th Cir. 1998)). Under 28 U.S.C. § 2244(b)(3)(A), an inmate must move in the appropriate court of appeals for an order of authorization before filing a second or successive petition in district court. *See Felker v. Turpin*,

518 U.S. 651, 664 (1996). "Indeed, the purpose and intent of [section 2244(b)(3)(A)] was to eliminate the need for the district courts to repeatedly consider challenges to the same conviction unless an appellate panel first found that those challenges had some merit." *United States v. Key*, 205 F.3d 773, 774 (5th Cir. 2000).

Here, Petitioner's first claim challenges the state court's jurisdiction regarding his underlying 1992 conviction for capital murder.[5]   (Docket No. 1, ¶ 20 (Ground One).)   As Respondent correctly notes, this claim could have—and should have—been presented in Petitioner's first federal petition. (Docket No. 5, at 6-7.)  This claim is based on his personal knowledge of what occurred during his underlying state criminal proceedings.  Stated another way, Petitioner was aware of the facts underlying this claim at the time he was convicted.

Because Petitioner's first claim involves issues that he could have presented in his initial petition, the current pleading constitutes a successive habeas petition. *Hardemon*, 516 F.3d at 275.  Accordingly, the District Court lacks jurisdiction to consider this claim. *Key*, 205 F.3d at 774 (finding that section 2244(b)(3)(A) "acts as a jurisdictional bar to the district court's asserting jurisdiction over any successive habeas petition until [the circuit court] has granted the petitioner permission to file one."). Petitioner must seek authorization from the Court of Appeals for the Fifth Circuit before the District Court can adjudicate the merits of his first claim.  28 U.S.C. § 2244(b)(3)(A).

Perhaps aware of this, Petitioner did seek authorization from the Fifth Circuit to file a successive § 2254 habeas petition. *See Resendez*, No. 21-40200, Docket Nos. 1, 12.  Petitioner sought authorization to assert numerous claims, one of which was a challenge to the state trial

---

[5] Specifically, Petitioner challenges the state court's jurisdiction based on the change of venue that occurred, the supposed unknown identity of the victims, and because Petitioner's name was improperly identified. (Docket No. 1, ¶ 20 (Ground One).)

court's jurisdiction.  *See Resendez*, No. 21-40200, Docket No. 29, at 1.   However, after reviewing Petitioner's potential claims, the Fifth Circuit denied his motion seeking authorization to file a successive § 2254 petition regarding his challenge to the trial court's jurisdiction.  *See Resendez*, No. 21-40200, Docket No. 29, at 2.  As such, the District Court lacks jurisdiction to consider Petitioner's first claim.  *Key*, 205 F.3d at 774 (finding that section 2244(b)(3)(A) "acts as a jurisdictional bar to the district court's asserting jurisdiction over any successive habeas petition until [the circuit court] has granted the petitioner permission to file one.").

## C.    Petitioner's Request for DNA Testing

Next, Petitioner alleges that the state district court that denied his request for DNA testing erred.  (Docket No. 1, ¶ 20 (Ground Two).)  Specifically, Petitioner's argues that the 229th District Court erred by denying his request when "[t]here was plenty of samples of what is believed to be blood to test that's not been subjected to DNA testing."  (*Id.*)  Respondent argues that this claim does "not show that [Petitioner] is 'in custody in violation of the Constitution or law or treatises of the United States,' [and therefore it is] not cognizable on federal habeas review."  (Docket No. 5, at 7.)  Respondent is correct.

To be sure, "DNA testing has an unparalleled ability both to exonerate the wrongly convicted and to identify the guilty."  *Dist. Att'y Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 55 (2009).  DNA testing also "has the potential to significantly improve both the criminal justice system and police investigative practices."  *Id.*  However, "the development of rules and procedures" for DNA testing lies in "the hands of [state] legislatures and state courts shaping policy in a focused manner."  *Id.*

"Chapter 64 of the Texas Code of Criminal Procedure permits a convicted defendant to move for post-conviction DNA testing of evidence."  *Elam v. Lykos*, 470 F. App'x 275, 276 (5th

Cir. 2012) (citing TEX. CODE CRIM. PROC. ANN. art. 64.01).   However, "[a]ny right petitioner

may have regarding post-conviction DNA testing arises solely under Texas law and does not

implicate a federal constitutional issue." *Johnson v. Thaler*, No. H-07-1152, 2010 WL 2671575,

at *3 (S.D. Tex. June 30, 2010) (citing *Trevino v. Johnson*, 168 F.3d 173, 180 (5th Cir. 1999)).

"Federal habeas relief is only available if a petitioner shows he is in custody in violation of the

Constitution or laws or treaties of the United States." *Johnson*, 2010 WL 2671575, at *3 (citing

28 U.S.C. § 2254(a)).   Because "[a] federal habeas corpus petitioner has no right to collaterally

challenge a state-court's application of its statute governing DNA testing," Petitioner "has not

raised a valid habeas corpus claim regarding DNA testing." *Perry v. Hall*, No. 1:19-cv-29, 2020

WL 1277201, at *6 (N.D. Miss. Mar. 17, 2020) (citing *Skinner v. Switzer*, 562 U.S. 521, 533-34

(2011)).

      As such, Petitioner's claim that the 229th District Court erred by denying his request

for DNA testing should be rejected.[6]

---

[6] As noted, in 2021 Petitioner sought authorization to file a successive § 2254 petition
from the Fifth Circuit. *See In re: Eustorgio Guzman Resendez*, No. 21-40200, Docket Nos. 1, 12
(5th Cir. Mar. 22, 2021).  The Fifth Circuit summarized the claims that Petitioner wished to raise
in his successive petition, which included (among other things) the following: 1) one of the
witnesses has since recanted his testimony; 2) the evidence was insufficient because the State
relied on testimony from a codefendant that was not supported by physical evidence; and 3) his
due process rights were violated by the use of perjured testimony by his codefendant. *See
Resendez*, No. 21-40200, Docket No. 29, at 1.  However, these claims are similar to the ones
raised by another state prisoner alleging error by the state court's denial of his request for post-
conviction DNA testing. *See Elam v. Lykos*, 470 F. App'x 275 (5th Cir. 2012).  The Fifth Circuit
noted that Elam's claims included that "his due process rights were violated by the State's denial
of his request for post-conviction DNA testing because the evidence submitted at trial included
unreliable and fabricated physical evidence and perjured testimony." *Elam*, 470 F. App'x at 276.
However, the Fifth Circuit held that "Elam's arguments do not establish his due process rights
were violated" because "[a]ny further DNA testing of the evidence from Elam's trial would not
be probative on the issue of Elam's guilt or innocence." *Elam*, 470 F. App'x at 276 (citing
*Osborne*, 129 S. Ct. at 2320; *Skinner*, 131 S. Ct. at 1293; TEX. CODE CRIM. PROC. ANN art.
64.03).  For similar reasons, showing that the state district court erred in denying Petitioner's
claims for DNA testing would likewise prove difficult, if not futile.

Next, Petitioner has filed a "Motion for Forensic DNA Testing." (Docket No. 9.) In his motion, Petitioner "respectfully [requests] that this Honorable Court order the Forensic DNA testing of all the Biological Evidence of this Case based on the fact that no evidence has been submitted for DNA testing." (*Id.* at 1.) Petitioner's request is based on what he alleges is required by Texas state law, specifically, Article 64 of the Texas Code of Criminal Procedure. (*See generally id.* at 1-5.) Petitioner further alleges that the requested DNA testing is necessary because the identity of the perpetrators, the identity of the victims, and their cause of death "still remains an issue in this case."[7] (*Id.* at 4.)

However, as Respondent points out, "the United States Supreme Court has rejected the existence of a free-standing federal constitutional right to obtain postconviction assess to state evidence for DNA testing." (Docket No. 5, at 8 (citing *Osborne*, 557 U.S. at 55).) The Supreme Court held that a state prisoner's right to postconviction DNA testing is not protected under "the broad parameters of the Due Process Clause." *Osborne*, 557 U.S. at 55. In fact, the Supreme Court labeled this potential right as "far-reaching" and stated that "[t]here is no reason to

---

[7] "Under Texas law, a convicted person may submit to the convicting court a motion requesting DNA testing of evidence containing biological material." *Johnson*, 2010 WL 2671575, at *2 (citing Tex. Code Crim. Proc. Ann. art. 64.01). One of the statutory requirements for DNA testing is that "the convicted person must show that the identity of the perpetrator was or is an issue in the case." *Johnson*, 2010 WL 2671575, at *2 (citing Tex. Code Crim. Proc. Ann. art. 64.01, 64.03). As noted, in his "Motion for Forensic DNA Testing," Petitioner alleges that the "identity of the perpetrators still remains an issue in this case." (Docket No. 9, at 4.) However, in rejecting his request for DNA testing, the state court found that Petitioner failed to show that "the identity of the perpetrator was or is an issue in the case." Specifically, in reviewing his claim of error, the Thirteenth Court of Appeals of Texas found that "the DNA testing that [Petitioner] seeks would only 'muddy the waters' as to who was killed; it would not shed any light on who committed the murder of the four victims." *Resendez v. State*, No. 13-19-278-CR, 2021 WL 376902, at *3 (Tex. App.—Corpus Christi—Edinburg, Feb. 4, 2021, pet. ref'd). "In other words, the requested DNA testing would have no bearing on whether [Petitioner] committed the crime as either the principal perpetrator or as a party." *Id.* As such, the court found that Petitioner failed to meet his burden to show that the state district court erred in denying his request for post-conviction DNA testing. *Id.*

constitutionalize the issue in this way." *Id.* Stated another way, Petitioner's free-standing motion for forensic DNA testing (Docket No. 9) is not "contrary to," nor does it involve "an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1), (2).

Accordingly, Petitioner's claim that the 229th District Court erred in its denial of his request for DNA testing (Docket No 1, ¶ 20 (Ground Two)) and his motion for forensic DNA testing (Docket No. 9) should be denied.

## D.  Ineffective Assistance of Counsel

Petitioner's final claim is that his attorney rendered ineffective assistance of counsel as it relates to his state request for DNA testing.  (Docket No. 1, ¶ 20 (Ground Three).)  Courts assess an attorney's representation under the framework set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.  Under *Strickland*, a criminal defendant's Sixth Amendment rights are "denied when a defense attorney's *performance* falls below an objective standard of reasonableness and thereby *prejudices* the defense." *Yarborough v. Gentry*, 540 U.S. 1, 3 (2003) (emphasis added); *see also Rompilla v. Beard*, 545 U.S. 374, 387 (2005); *Wiggins v. Smith*, 539 U.S. 510, 520 (2003).  "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700.

To establish deficient performance, the petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687.  The Supreme Court has "declined to articulate

14

specific guidelines for appropriate attorney conduct." *Wiggins*, 539 U.S. at 521. Instead, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688. In reviewing ineffectiveness claims, "judicial scrutiny of counsel's performance must be highly deferential," and every effort must be made to eliminate "the distorting effects of hindsight." *Id.* at 689. An ineffective assistance claim focuses on "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct[,]" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689–90.

With regard to the prejudice requirement, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *see also Wiggins*, 539 U.S. at 534. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *See Strickland*, 466 U.S. at 694; *Wiggins*, 539 U.S. at 534.

Petitioner has failed to show that his attorney rendered ineffective assistance of counsel regarding the denial of his motion in state court for DNA testing. To begin with, there is no constitutional right to counsel during a postconviction proceeding. *Pennsylvania v. Finley*, 481 U.S. 551, 555-59 (1987). Here again, "[f]ederal habeas relief is only available if a petitioner shows he is in custody in violation of the Constitution or laws or treatises of the United States." *Johnson*, 2010 WL 2671575, at *3 (citing 28 U.S.C. § 2254(a)). Because Petitioner has no constitutional right to counsel at his motion for DNA testing in state court, his claim regarding ineffective assistance fails on that basis alone. *Johnson*, 2010 WL 2671575, at *3 ("[P]etitioner's complaints regarding counsel's performance at the DNA testing hearing afford him no relief as no federal constitutional issue is presented.").

15

In any event, "[e]ven assuming petitioner enjoyed a Sixth Amendment right to counsel for purposes of his post-conviction DNA testing proceeding, the state appellate court rejected his claim of ineffective assistance of counsel." *Johnson*, 2010 WL 2671575, at *3. Specifically, the Thirteenth Court of Appeals of Texas determined that Petitioner's assertions of counsel's alleged deficiencies "did not affect his ability to pursue an appeal or change the outcome of the proceedings below in any way." *Resendez*, 2021 WL 376902, at *3 ("Thus, [Petitioner] has failed on the second *Strickland* prong."). In other words, even assuming that Petitioner has shown deficient performance (which he has not), he has failed to affirmatively prove that he was prejudiced by any supposed errors of counsel. *Strickland*, 466 U.S. at 700 (Failure to prove one prong of the *Strickland* analysis is fatal to an ineffective assistance of counsel claim).[8]

As such, Petitioner's final claim alleging ineffective assistance of counsel should be rejected.

## III.  CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment (Docket No. 5) be GRANTED, that Petitioner's Petition for Writ of Habeas Corpus Pursuant to § 2254 (Docket No. 1) be DENIED, that Petitioner's "Motion for Forensic DNA Testing" (Docket No. 9) be DENIED, and that this action be DISMISSED. For the reasons discussed below, it is further recommended that Petitioner be denied a certificate of appealability.

## CERTIFICATE OF APPEALABILITY

---

[8] As noted, Petitioner has filed numerous post-conviction state court pleadings for various forms of relief, which are fully summarized in the report addressing his first federal petition for habeas corpus. (*See Resendez*, 7:11-CV-172, Docket No. 13, at 5-7.) Most of his post-conviction court filings involve—either directly or indirectly—his multiple requests for DNA testing. (*See id.*) Notably, all of his requests for DNA testing have been rejected by the multiple courts that have addressed their merits.

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although Petitioner has not yet filed a notice of appeal, the recently-amended § 2254 Rules instruct that the District Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, RULES GOVERNING SECTION 2254 PROCEEDINGS. Because the undersigned recommends the dismissal of Petitioner's § 2254 action, it is necessary to address whether Petitioner is entitled to a certificate of appealability (COA).

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). To warrant a COA as to claims denied on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); s*ee also United States v. Jones*, 287 F.3d 325, 329 (5th Cir. 2002) (applying *Slack* standard to a COA determination in the context of a habeas corpus proceeding). An applicant may also satisfy this standard by showing that "jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *see also Jones*, 287 F.3d at 329. As to claims that a district court rejects solely on procedural grounds, the prisoner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Here, Petitioner's § 2254 claims should be dismissed on procedural grounds and on their merits. For the reasons explained in this report, the undersigned believes that reasonable jurists would not find debatable the conclusion that Petitioner's first claim is successive. In addition, the undersigned believes that reasonable jurists would not find debatable or wrong the conclusion that Petitioner's remaining claims lack merit, nor are the claims adequate to deserve encouragement to proceed further. Accordingly, Petitioner is not entitled to a COA.

## <u>NOTICE TO THE PARTIES</u>

The Clerk shall send copies of this Report and Recommendation to Petitioner and counsel for Respondent, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

DONE at McAllen, Texas on February 2, 2023.

Nadia S. Medrano
UNITED STATES MAGISTRATE JUDGE